# CHARLESTON.

TONY RUSSELL *et al. doing business etc. v.* MARSH FORK COAL COMPANY, *a Corporation*

### (No. 5835)

Submitted May 11, 1927.     Decided May 24, 1927.

CONTRACTS—*Evidence Tending to Show Oral Contract Different in Point of Time, Terms, and Manner of Execution From One Pleaded Held Properly Excluded (Code, c. 98, § 1).*

Evidence tending to show a contract different in point of time, terms and manner of execution from the contract pleaded, is properly excluded.

(Contracts, 13 C. J. § 911.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Kanawha County.

Assumpsit by Tony Russell and others, doing business, etc., against the Marsh Fork Coal Company. Judgment for plaintiffs for less than they asked, and they bring error.

*Affirmed.*

*B. J. Pettigrew* and *Jean Smith,* for plaintiff in error.
*Poffenbarger, Blue & Dayton,* for defendant in error.

HATCHER, PRESIDENT:

This is an action in assumpsit. The declaration seeks a recovery for (a) the balance due on a written contract between the parties hereto, dated May 4, 1918, pertaining to the grading of the "Marsh Fork Thacker" side-track, (b) damages for the breach of an oral promise by the president of defendant, extending all the terms of the written contract for a period of four years to work of "like nature and kind" to that in the written contract, and (c) compensation for conversion by the defendant to its own use on May 4, 1921, of the steam shovel outfit, tools and equipment used by plaintiffs under the written contract.

The trial court struck out the evidence as to any contract except the written contract of May 4, 1918, and submitted to the jury the claims of plaintiffs for balance due on the written contract and for the conversion of their property. The jury determined these matters in favor of plaintiffs, and assessed their damages at $200.00. The plaintiffs obtained a writ of error here.

By virtue of Sec. 1, Ch. 98, Code, an action is forbidden "upon any agreement that is not to be performed within a year", unless the agreement or some memorandum or note thereof be in writing. There is no note or memorandum in writing of the alleged oral promise of defendant's president. Therefore the trial court correctly struck out the evidence of that oral promise. *Parkersburg Mill Co.* v. *Ry. Co.,* 50 W. Va. 94; *Alkire* v. *Orchard Co.,* 79 W. Va. 526; Williston on Contracts, Secs. 593 and 597.

Counsel for plaintiffs charge error to the court for excluding from the evidence three letters written to the plaintiffs by T. E. B. Siler, who was president of the defendant. Counsel contend that these letters "show a continuation of the original contract", and that they are "supplementary in explaining defendant's working conditions and intentions and were made for the sole and only purpose of continuing its re-

lations with plaintiffs''.. The first letter referred. to is dated Sept. 18, 1920, and notified plaintiffs that the writer was going to Columbus to attend a meeting in regard to work .on Birch Fork and would arrange for a meeting with plaintiffs upon his return to ''close up contract''. On Sept. 22, 1920, Siler wrote plaintiffs in part as follows: ''My people at Columbus yesterday decided they would pay $1.00 per yard for handling the barrow and fill work and three and one-half mile of road and all the siding. Work to be started at once and pushed night and day and if you are ready to close contract on that basis you could come up here at once and Mr. Milne would enter into a contract with you.· You could move your outfit immediately. * * * Now if this is satisfactory I would say that you begin to cut your dogs loose for the two years or at least in my judgment for a long, long time.'' The third letter, dated May 19, 1921, expressed Mr. Siler's regret ''that matters have been held up'', and stated, ''I used my best influence to help you get that work, and if you do not get the work I will see that you get paid for the material that you shipped up there. · I have already paid the excess on it''. These letters weaken, instead of · strengthen, plaintiffs' contention. The first letter negatives the idea of a contract actually existing on Sept. 18, 1920, by proposing a conference with plaintiffs for the express purpose of closing up a contract. ''The circumstance that the parties do intend a subsequent agreement to be made, is strong evidence to show that they did not intend the previous negotiations to amount to an agreement,'' said Lord Chancellor Cranworth in *Ridgeway* v. *Wharton,* 6 H. L. C. 239, (268). Whether ''my people at Columbus'', referred to in the letter of Sept. 22, 1920, were officials of the defendant does not appear. Whoever they may be, they were certainly not offering to continue, extend or supplement the original contract. In that contract the plaintiffs were paid for the· work performed by their outfit at the rate of $2000.00 a month. In the letter of Sept. 22, an offer was made to pay by the yard for the ''barrow and fill work'' handled. That offer is not an offer to continue the· terms of the original· contract, but an entirely new one.

Whether that proposal was satisfactory to plaintiffs does not clearly appear. Tony Russell, one of the plaintiffs, testified in regard thereto as follows: "At the time he wrote me the first letter to come down to Charleston and sign the contract we come down, me and my brother, in his office, and he told us to move everything up there ready to go to work. This was on Monday morning. He said Mr. Posten was going to be here Wednesday, and he said 'You go ahead and move your equipment there, everything you got.' So the same day we go to Huntington and load this stuff and ship it. We come back Wednesday and we ask about Mr. Posten in Mr. Siler's office. Mr. Siler said that Mr. Posten go to New York, but he going to be here next week. He says 'You go ahead and move your steam shovel.' I says 'Mr. Siler, I aint going to have any more expense. I will wait to have this contract signed.' He said 'If you dont believe me you wait.' "

The declaration does not plead any contracts except the original contract and the oral promise of Siler to extend the terms of the original contract for four years. The declaration does not refer to the conversion of any property except "all of said steam shovel outfit, tools and equipment". The outfit therein referred to was the one used under the original con- tract. It was left at Marsh Fork when that work ended in the summer of 1918, and was never removed from there by the plaintiffs. The material loaded at Huntington in 1920 was shipped to Colcord, which is some six miles from the Marsh Fork Thacker side-track. That material can therefore not be treated as a part of the Marsh Fork outfit. There is no direct testimony that plaintiffs ever accepted, either formally or informally, the offer of Sept. 22. The inference is that they did accept it, and that the shipment of the material from Huntington was made in execution of that acceptance. Nevertheless, there can be no recovery for that material or for damages for a breach of that contract in this suit, because neither that breach nor a conversion of that material is de- clared on in this declaration. In other words, there is no allegation in this declaration upon which to base proof as to that breach or that conversion. The regret of Siler in

the third letter that "matters have been held up", shows that a contract had not even then been consummated. The promise in that letter to reimburse plaintiffs for the material shipped from Huntington is, by its express terms, the personal promise of Siler. Even if we construe that promise to be the promise of defendant, still that promise, as well as the other matters in the three letters from Siler, contain no reference to the alleged oral contract for four years extension of the written contract, and were properly excluded from the jury because the declaration signally fails to declare on an acceptance of performance under and promise upon the new contract proposed in the letter of Sept. 22, 1920. *"Allegata* and *probata* must correspond. Where there is no count in a declaration on the cause of action shown by the evidence, it is a variance, and there can be no recovery." *Riley* v. *Jarvis,* 43 W. Va. 43. It is true that some of the materials shipped from Huntington are listed in the bill of particulars filed with the declaration. But the bill of particulars is no part of the declaration. Recovery cannot be had for articles mentioned in such bill, unless the claim upon which they are based is properly pleaded in the declaration. *Riley* v. *Jarvis, supra.*

There is ample evidence limiting the amount due the plaintiffs on the original contract and on such of the Marsh Fork property as the defendant converted, to $200.00. Therefore we cannot say that the verdict is erroneous.

Perceiving no error in the ruling of the trial court under the pleadings, the judgment is affirmed.

*Affirmed.*